IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRINKER INTERNATIONAL, INC. et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:22-cv-00440-M |
| US FOODS INC., et al., | § § § | |
| Defendants. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Remand, filed by Plaintiffs Brinker International, Inc. and Brinker International Payroll Company, L.P. ECF No. 18. For the following reasons, the Motion is **GRANTED.**

I.   BACKGROUND

Plaintiffs Brinker International, Inc. and its subsidiary Brinker International Payroll Company, L.P. (collectively, "Brinker") operate numerous restaurants, and regularly contract with distributors to secure produce from suppliers for said restaurants. *See* Petition (ECF No. 1-5) ¶ 7. Brinker previously contracted with one such food distributor, System Services of America Inc., pursuant to two distribution agreements, dated February 1, 2011, and February 1, 2016 (collectively, the "Distribution Agreements").

Brinker alleges that the Distribution Agreements include language that curtail a distributor, such as System Services of America, from pursuing legal claims against Brinker's suppliers. *Id.* ¶¶ 7–9. For example, § 4.14 of the 2016 Agreement states that "upon reasonable request, distributor shall provider [Brinker] with an assignment of any legal rights and claims

1

that it may have against suppliers" upon reasonable request and to "cooperate with [Brinker] in the enforcement of such rights against suppliers." *Id.* ¶ 34 (alterations in original). Similarly, the 2011 Agreement states that System Services of America "shall assign to Brinker . . . all assignable rights" against supplies of goods supplied to Brinker. *Id.* ¶ 35 (alteration in original). In addition, § 18.4(a) of the 2016 Agreement binds "respective successors and assigns, if any, of the parties hereto" to its terms, and § 18.10 of the 2016 Distribution Agreement prohibits System Services of America and its affiliates from "tak[ing] any action, the purpose of which is to subvert or evade any provision of this Agreement." *Id.* ¶¶ 37–38.

Brinker maintains that these provisions "mandate that the distributor must assign any claims to Brinker upon request," and "prohibit the distributor from accepting any other unapproved benefit or compensation from suppliers or from seeking or recovering any type of compensation from suppliers as a result of . . . overcharges or otherwise." *Id.* ¶¶ 5–6.

Systems Services of America is a subsidiary of Defendant Services Group of America, Inc. ("SGA"). Brinker alleges that, on September 12, 2019, Defendant US Foods, Inc. ("USF ") acquired five subsidiaries of Defendant SGA, including Systems Services of America. *Id.* ¶¶ 20–23. In January 2020, following the acquisition, USF allegedly dissolved Systems Services of America and assumed all its rights and obligations, including those under the Distribution Agreements. *Id.* ¶ 23.

On January 6, 2022, Brinker filed suit in the 160th Judicial District of Dallas County, Texas, asserting claims for breach of contract, conversion, unjust enrichment, and tortious interference with contract. *Id.* ¶¶ 8, 9, 56, 74, 93, 104, 119. Brinker's allegations relate to federal antitrust claims asserted by Defendants in separate lawsuit against chicken suppliers, referred to by the parties as the "Broiler Chicken Litigation." *Id.* ¶¶ 71, 75–76. "The basic

allegation in the Broiler Chicken Litigation is that [the defendants in that case] conspired to raise the price of chicken by agreeing to restrict supply, manipulate price indices, and fix bids, among other conduct," in violation of the Sherman and Clayton Acts. *Id.* ¶ 2. Brinker seeks, in part, to recover money accepted by Defendants through settlement of their antitrust claims in the Broiler Chicken Litigation that Brinker maintains were improperly asserted by Defendants and should have been assigned to Brinker under the Distribution Agreements.

On February 23, 2022, Defendants removed the suit filed against them by Brinker to this Court, asserting federal question jurisdiction. Notice of Removal (ECF No. 1) ¶ 5. Specifically, Defendants contend in the Notice of Removal that even though Plaintiffs assert only state-law claims, resolution of Plaintiff's claims require the Court to determine whether the antitrust claims were validly assigned, which necessarily requires resolution of a question of federal law. *Id.*

## II.      LEGAL STANDARD

Any action in state court "of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court." 28 U.S.C. § 1441(a). The removing party must demonstrate that there is federal question jurisdiction and that removal was appropriate. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts as to the propriety of the removal are to be construed strictly in favor of remand. *Id.*; *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

Federal question jurisdiction exists when a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A complaint presents a federal question on its face when it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

3

law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).  The Supreme Court and the Fifth Circuit have noted "the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  *Id.* at 338 (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).  Even the "fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction."  *Id*.  A federal issue embedded in a state claim establishes federal jurisdiction only when: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."  *Mitchell v. Advanced HCS, L.L.C*., 28 F.4th 580, 588 (5th Cir. 2022) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 312 (2005)).  All four factors must be met.

### III.   ANALYSIS

Brinker moves to remand, arguing that it asserts only state-law claims arising out of a contractual agreement between Brinker and Defendants' prior subsidiary, Systems Services of America, and accordingly the Court lacks original jurisdiction under 28 U.S.C. § 1331.  In response, USF[1] contends that federal jurisdiction exists because the Petition presents a federal claim on its face, and alternatively, that Brinker's claims require the resolution of substantial federal antitrust issues.

#### a.   The Petition does not present a federal claim on its face.

The Petition asserts claims under Texas state law for breach of contract, conversion, unjust enrichment, and tortious interference with contract.  USF contends these claims all rely on

---

[1] Of the two Defendants, only USF responded to the Motion to Remand.

a theory that Brinker is entitled to litigate claims and recover damages from the defendants in the Broiler Chicken Litigation related to violations of the Sherman Act, and that Brinker "creatively pleads" to avoid expressly asserting a federal antitrust claim. ECF No. 31 at 14; *see Hayes v. Solomon*, 597 F.2d 958, 984 (5th Cir. 1979) ("[F]ederal courts have exclusive jurisdiction over federal antitrust claims."). According to USF, Brinker is actually asserting rights arising "under the federal common law—the right to contract for the assignment of an antitrust claim." ECF No. 31 at 14–15.

The Court disagrees. Brinker's claims stem from the Distribution Agreements and Defendants' alleged failure to comply with terms therein. Federal law does not create any of the contract- or equity-based causes of action asserted in the Petition, and although the Petition makes reference to antitrust claims, it does not invoke antitrust law as creating the basis for Brinker's claims. For example, there are no allegations that Defendants themselves improperly manipulated the market or elevated prices at Brinker's expense.

Moreover, the fact that the assignment of an antitrust claim may be governed by federal common law does not necessarily mean that a contract claim based on the failure to assign an antitrust claim arises under federal common law. Here, the assignment language from the Distribution Agreements is not limited to antitrust claims; hypothetically, Brinker could bring a claim for breach of the Distribution Agreements in response to Defendants' failure to assign a tort or negligence claim, which would not implicate federal law. Accordingly, USF at best identifies a defense arising under federal law, namely that federal law precludes the type of assignment—assignment of an antitrust claim—Brinker alleges it was entitled to. However, a federal defense to a state-law claim does not create removal jurisdiction. *See Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.2d 1157, 1161 (5th Cir. 1989) ("The fact that a

federal defense may be raised to the plaintiff's action—even if both sides concede that the only real question at issue is created by a federal defense—will not suffice to create federal question jurisdiction.").

### b. Resolution of Plaintiff's claims does not depend on the resolution of a substantial question of federal law.

In the alternative, USF argues that this Court has federal jurisdiction over Brinker's state-law claims because Brinker's right to relief necessarily depends on the resolution of a substantial question of federal antitrust law, namely whether Brinker, an indirect purchaser, is entitled to recover damages awarded to Defendants, as direct purchasers, for violations of the Sherman Act.

As discussed, USF contends that for Brinker to prevail on any of its claims, Brinker must first establish that it was entitled to an assignment of the antitrust claims under the Distribution Agreements, which according to USF, involves a substantial, disputed question of federal law, warranting removal jurisdiction. Specifically, USF argues that resolution of Brinker's claims will require application of the "direct purchaser" rule, which provides that only those who purchase goods with inflated prices directly from the alleged price-fixer can assert antitrust claims; subsequent, indirect purchasers are barred from suit. *E.g.*, *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019) ("[I]ndirect purchasers who are two or more steps removed from the antitrust violator in a distribution chain may not sue. By contrast, direct purchasers—that is, those who are 'the immediate buyers from the alleged antitrust violators'—may sue." (quoting *Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 207 (1990)). USF relies on authority from the Third Circuit, which states that "any assignment of antitrust claims, as a matter of federal common law, must be an express assignment; general assignments, without specific reference to antitrust claims, cannot validly transfer the right to pursue those claims." *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 440 (3d Cir. 1993). Citing *Gulfstream*, USF

6

argues that the requirement under the Distribution Agreements for Systems Services of America—and thus Defendants—to assign to Brinker "*any* legal rights and claims that it may have against suppliers" is not an express assignment, and thus could not operate as a valid assignment of antitrust claims under federal common law.  *See* Pet. ¶ 34 (emphasis added).

The Court concludes that these federal issues are neither raised or nor disputed on the face of the Petition, and accordingly, declines to exercise jurisdiction based on any embedded federal issues.  *Mitchell*, 28 F.4th at 588 ("[T]he court looks to the face of a plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable*.").  As discussed, USF asserts federal antitrust common law defensively, arguing that the lack of an express antitrust assignment provision in the Distribution Agreements preempts Brinker's claims based on any failure to assign.  However, the language of the Distribution Agreements provides that Brinker had the right to *request* an assignment of legal claims and rights, and the Petition expressly contemplates that this was done to comply with the requirement that assignments be specifically and expressly assigned.  *E.g.*, Pet. ¶ 34 (2016 Distribution Agreement states the distributor will assign any legal rights and claims to Brinker "upon reasonable request"); *id.* ¶ 36 ("The parties structured the assignments in this manner (*i.e.*, as a requirement to provide an assignment, rather than as a general assignment) to . . . ensure that Brinker could obtain the assignment in the proper format required by the circumstances.  If, for example, Brinker believed it needed an assignment that was tailored to a specific antitrust case, the parties intended for this provision to allow it to obtain that specific assignment.").  Brinker alleges that it requested an express antitrust assignment from Defendants for Defendants' claims in the Broiler Chicken Litigation, but Defendants refused to provide one.  *Id.* ¶ 39.

7

Accordingly, the issue presented is not whether a general assignment to Brinker under the Distribution Agreements would be valid for antitrust claims, but rather whether Defendants failed to comply with their obligation under the Distribution Agreements to make a valid assignment. Put differently, Brinker is not arguing that it was assigned antitrust claims by operation of the assignment provision in the Distribution Agreements. Thus, the Court finds Defendants have not carried their burden in establishing federal question jurisdiction, because the "substantial federal issue" identified by USF—whether the Distribution Agreements validly assigned antitrust claims under federal common law—is neither substantial nor disputed. To the extent that there are any federal issues presented in this case, they are not "necessary" within the meaning of § 1331.

### IV. CONCLUSION

Because Defendants have failed to establish federal question jurisdiction, this Court lacks subject matter jurisdiction. Accordingly, this Court **GRANTS** Plaintiff's Motion to Remand (ECF No. 18) and **ORDERS** that this action be remanded to 160th Judicial District Court of Dallas County, Texas.

**SO ORDERED**.

August 8, 2022.

BARBARA M. G. LYNN
CHIEF JUDGE